## MICAJAH FRAZER v. ROBINSON & DANIEL.

1. CONFEDERATE MONEY: CONSIDERATION. — Executory contracts founded upon Confederate money as a consideration, are legal and binding. *Green* v. *Sizer*, 40 Miss. 530.
2. CONTRACTS FOR SALE OF LAND EXECUTED, WHEN. — A contract for the purchase of land is executed when the purchase-money is paid, the deed from the vendor executed, delivered, and acknowledged, and possession given to the vendee.
3. STAMP ACT: VALIDITY OF UNSTAMPED DEEDS, AND OTHER WRITINGS MADE DURING THE WAR. — All deeds or other instruments of writing, executed during the war, are valid, and admissible as evidence, though not stamped at the time of their execution as required by the laws of the United States, provided that, after the close of the war, they are stamped by the proper revenue officer, and in accordance with the recent act of Congress.
4. SAME: STAMPING BY REVENUE OFFICER: PRESUMPTION AS TO VALIDITY OF ACT. — When the proper revenue officer stamps an unstamped deed or other instrument of writing, and certifies thereto, the law presumes that he has done his duty, and affixed the amount of stamps required by the act of Congress.
5. SAME: AMOUNT OF STAMPS REQUIRED WHEN CONSIDERATION IS CONFEDERATE MONEY. — A deed of conveyance of land which recites a consideration of so much Confederate money is not required to be stamped according to the amount of Confederate money stated, but in proportion to its value at the time of the execution of the deed as compared with gold.
6. LANDLORD AND TENANT: TENANT CANNOT DISPUTE LANDLORD'S TITLE. — A tenant in possession, under a contract of lease, cannot set up title adverse to that of his landlord.

ERROR to the Circuit Court of Holmes county. Hon. J. A. Campbell, judge.

Robinson & Daniel brought their action of ejectment against Micajah Frazer, to recover six hundred and eighty acres of land in Holmes county. Frazer appeared and pleaded "not guilty," in manner and form required by the statute.

On the trial of the issue, Robinson & Daniel offered as evidence a deed from Micajah Frazer to themselves for the land in controversy, executed and acknowleged by Frazer on the 9th day of February, A.D. 1865.    This deed recites a consideration of twenty-two thousand dollars in Confederate money paid.    It was filed for record on the 19th May, A.D. 1865, and recorded the same day.    After the certificate of the Probate Clerk that the deed was filed for record and recorded, appears the following: " On the 23d day of January, 1866, Jno. W. Robinson appeared before me and made the necessary affidavit, presented the proper stamps, and requested that the foregoing deed should be stamped.  I do, on the date aforesaid, affix the proper stamps to said deed, and hereby remit the penalty of $50, as authorized by the statute.    F. S. Hunt, Col. 2 Dist. Miss."

On the margin of the foregoing certificate appears two revenue stamps, one for one dollar, the other for fifty cents, cancelled, " F. S. H., January 23d, 1866."   Counsel for Frazer objected to this deed as evidence, 1st, Because the consideration shown was Confederate money; 2d, Because the stamps are not on the deed, but on the clerk's certificate; and, 3d, Because the stamps are not sufficient in amount.   The objection was overruled by the court, the deed admitted, and counsel for Frazer excepted.

H. C. Daniel, one of the plaintiffs, testified — That after the purchase of the land, he, in behalf of himself and Robinson, made a verbal contract with Frazer for the lease of the lands for the balance of the year 1865, Frazer agreeing to pay therefor one tenth of the crop.

Testimony was introduced, showing the value of the rent of the land from the 1st of January, 1866, to the time of trial, to be one thousand dollars.   This was all the testimony in the cause.   The only instruction asked will be found in the opinion of the court.   The jury returned a verdict for Robinson & Daniel for the land and rent, and after a motion for a new trial made and overruled, Frazer prosecutes a writ of error to this court.   The errors assigned here are : That the court below improperly admitted the deed from Frazer to Robinson & Dan-

Micajah Frazer *v.* Robinson & Daniel.

iel, to be read as testimony. That the court erred in refusing the instruction asked by plaintiff in error.

*J. J. Hooker* for plaintiff in error.

The first question presented for determination by this record is whether an executory contract of this nature, wholly founded upon the consideration of what was commonly called and known as Confederate money or "Confederate notes," issued during the recent war, will now be considered valid in law, and can, under any circumstances, constitute the foundation for a legal right. I insist that "Confederate notes" were issued in aid and support of the late rebellion,— were illegal and void, to all intents and purposes,— in violation of the Constitution of the United States and against public policy, and that such notes cannot constitute, or become, a valid consideration for any contract. The plaintiffs in the court below could not claim the benefit of an obligation or predicate a right of action upon an alleged expenditure of Confederate notes. This is not a suit to recover Confederate money or its value, but a right claimed to enforce a contract, void, for want of a legal and valid consideration in law. The consideration is expressed in the face of the deed,—"Confederate notes," which were designed and used in attempting to set up a power in opposition to the government of the United States, and to aid and support the military forces engaged therein. It may be insisted that this contract is not void, as against public policy, unless it grows *immediately* out of the illegal act complained of.

This position, I apprehend, cannot be maintained either upon principle or authority. If issuing and circulating "Confederate notes," in aid and support of the rebellion, against the United States, was contrary to the public policy of that government, then the deed under consideration must be held by this court void. Chitty on Cont. p. 217 ; *The Inhabitants of Worcester* v. *Eaton*, 11 Mass. Rep. p. 368 ; *Hoover* v. *Pierce*, 26 Miss. Rep. 627, 632.

In the next place, the deed was not admissible, for want

both of proper stamping and an insufficient amount of stamps under the internal revenue laws of the United States.

It is not sufficient to stamp the certificate of the Probate Clerk, for that certificate may be removed, or attached to some other paper; but the law requires the deed itself to be stamped. Without such stamps "it shall not be received or used as evidence in any court of law or equity."

The consideration named in the deed is $22,000, and yet stamps only to the amount of one dollar and fifty cents is found upon the deed. It may be said that they were placed upon the deed and cancelled by an officer of the government. He is required by law to see that the proper amount of stamps is affixed when presented to him for that purpose. He may relieve the party from the penalty by his certificate, but cannot, by the use of an insufficient amount of stamps, make the deed admissible as evidence when without that it cannot be received. See United States Statutes of 1866–7.

For the same reasons, the court erred in overruling motion for a new trial. The motion should have been granted.

*D Shelton* for defendants in error.

First on the stamp question. It was not stamped at the time it was made, 9th February, 1865, which was before the surrender; but on the 23d January, 1866, before suit brought, this endorsement was put on it by F. S. Hunt, collector of internal revenue of the 2d District of Mississippi: "On the 23d day of January, 1866, John W. Robinson appeared before me and made the necessary affidavit, presented the proper stamps, and requested that the foregoing deed shall be stamped. I do, on the date aforesaid, affix the proper stamps to said deed, and hereby remit the penalty of $50, as authorized by the statute. F. S. Hunt, Col. 2 Dist. Miss."

With this certificate stamps were attached amounting to $1.50, cancelled by Hunt in proper form on said 23d January, 1866.

The deed was thus stamped under the provisos to the 158th section of the Stamp Act, p. 96. It was a literal compliance with that proviso, nor is the manner of doing it objected to by Frazer.

His objection is that these stamps and certificate were not put on the deed, but on the clerk's certificate of record. It was the original deed, and that was offered. The deed and acknowledgement thereof was on one piece of paper; the certificate of record, the stamps and Hunt's original entry, was on another piece of paper, firmly pasted to the other piece of paper. The certificate of record bears date before the act of stamping, and it certifies "that the deed to which the certificate is attached, from Frazer to Daniel, was filed," &c., thus showing that said certificate on which the stamps were placed was part of the deed at the time the stamps were attached, and Hunt's certificate is "that Robinson requested the foregoing deed" to be stamped, and "I do affix the proper stamps to *said deed*."

With these facts before the court, I am sure that I need not argue the question.

But it is urged that the stamps are insufficient in amount. It will be seen that the consideration specified in the deed is Confederate notes, and therefore the nominal sum is not the standard of value, although a source of information by which to ascertain its value. But the tax law says that when the "consideration or value does not exceed $500, fifty cents, and fifty cents for every additional $500." Schedule B, p. 103. The value put by Hunt was then $1,500. The act requires that the collector "shall affix the proper stamp to the instrument," and note on the margin of the instrument the date of his so doing, and such instrument shall thereupon be as valid as if stamped when issued. These words make the collector the sole judge of what is the proper stamp. The collector is the agent of the government, and in this particular, its representative; and the Stamp Act recognizes his act as conclusive, and makes the deed valid. The court could not therefore go behind the collector's certificate and institute an inquiry as to whether that collector had put a proper valuation on the property. The government is satisfied with it; no one else has a right to complain.

*Second.* The only real question in this cause is on the Confederate money feature of the case.

Upon the general question, I need not elaborate the argument.

Attempts have frequently been made, in this court and elsewhere in the State, to establish the doctrine that contracts formed on Confederate money are void, because illegal. I am not aware that any court has gone farther than this, that executory contracts of this nature cannot be enforced through the courts. Some one or two of the circuit judges at first held that doctrine. But none have ever held that an executed contract was void. Hence, no court has ever denied a remedy on a promissory note of that character. And our convention of 1865, by authorizing a reduction on such notes, recognizes that a remedy exists on them. And this court itself, after elaborate argument and mature deliberation, has, by thoroughly matured and very able opinions, sustained these contracts, whether executory or executed. *Murrell* v. *Jones*, 40 Miss. Rep. 566; *Green* v. *Sizer*, 40 Miss. Rep. 530.

Since these decisions, all such contracts, whether executory or executed, have been recognized as valid in every court in the State, and litigated rights have been adjudicated on the principle, perhaps, to the amount of millions. If, therefore, the voice of the convention, the decisions of this court, and the universal recognition of every court in the State, are to have any weight, or be of any authority to this court, the question is settled. It will produce confusion, injustice, litigation, and uncertainty, to unsettle a doctrine so firmly established, so universally acted on. Another year or two will end these questions; perhaps nine out of ten of them have already been decided. Better a thousand times, that the doctrine shall, for the small remnant of these cases, remain as settled, than that all the past shall be disturbed. It is now more important that uniformity shall be preserved, than that the penal principle invoked by Frazer shall be enforced.

But in this case, I do not think the question referred to is involved. In this case, the purchase of the land was made, and carried into effect, before the suit was brought. Robinson & Daniel had paid the consideration. Frazer had made the deed, and as I contend, put Robinson & Daniel in possession of the property. The facts are, that after payment by Robinson &

Daniel, and title made by Frazer, but while Frazer was in the actual occupancy of the land, by a distinct contract not contemplated at the time the purchase was made, Frazer rented the plantation from Robinson & Daniel, for the balance of the year 1865, and was to give for the rent of that year one tenth of his crop. This contract of renting was not simultaneous with the purchase, but some time after it. This was equivalent to a surrender of the possession, and the acceptance of tenancy for the year. It made Frazer's occupancy as tenant, the possession of Robinson & Daniel as his landlord.

The case, then, in this feature of it, is no suit to enforce the contract of purchase, that has already been voluntarily executed by Frazer. It is a suit by landlords against their tenant, who unlawfully holds over after his term has expired; and without testing title, we were entitled to recover on the tenancy alone.

But I may be asked how, under this view of the case, was Frazer's deed admissible. Reference to the facts will show. Frazer had been in actual occupation in his own right, and under his own title for years. It was necessary for us to show that he had, in fact, become our tenant. We could not show the change of title by parol, therefore we could not show it by Daniel's evidence alone. To show the tenancy, therefore, it was necessary to read the deed, and prove the parol contract. When this evidence was in, it proved correctly the facts,—one contract for the purchase, another for the tenancy,— and yet our case would not have turned on the legality of the contract of purchase, but on the question of tenancy. Let me illustrate. Suppose the contract of purchase had been made on Sunday, it was void, but the tenancy contract made afterwards, and not on Sunday, could Frazer have avoided the tenancy contract because the original purchase had been made on Sunday? Again, suppose we had sued for the rent, and to prove the renting, had read the deed, and proved the contract of renting, would the illegality of the previous contract have avoided the contract which was legal?

In this case, we relied on both contracts, in fact,—upon title derived through the contract of purchase, and upon tenancy cre-

ated by the contract of renting: the deed was pertinent to both. If, therefore, I were to admit that it was not admissible to show title, still, it was admissible as part of the evidence, to show tenancy; and for the latter reason, if not for the former, it could not be excluded by the court. The objection covered only one of the purposes for which it was sought to be read; the objection was therefore properly overruled, because it was admissible for the other purpose.

Upon the evidence, Frazer asked the court to instruct the jury: That if the defendant has been in possession of the land, claiming it as his own from a period prior to the date of plaintiff's deed, then the law of the case is for defendant; and they will so find if they believe the purchase-money was paid in Confederate notes (p. 17). The court refused it.

That instruction, if given by the court, would have been equivalent to the court's saying, that if the contract of purchase was illegal, because made for Confederate notes, the subsequent contract of renting was equally so, and plaintiff could recover on neither *title* nor *tenancy*. I admit the proposition, that if the contract of purchase was illegal, and the contract of renting was a part of the contract of purchase, the renting part of the contract was void, although it might be true that there was no illegal consideration for the renting, if it had stood by itself. But here was a subsequent contract made after the other had been carried into effect, not made to rest on the consideration of the purchase, but disconnected from the contract of purchase, relating to a distinct object; to wit, a term of rent and not to title or ownership of the land, founded on a new and wholly different consideration, to wit, a tenth of the crop, and not Confederate money. In short, a distinct and independent contract tainted with no illegality. The remedy exists on that contract, even if the prior purchase was illegal. 40 Miss. Rep. 341; 6 S. M. 128; 8 ib. 638; 10 ib. 97; 14 ib. 29; 7 ib. 386.

Again: The principle upon which courts act in cases of illegal contracts, is that of *strict neutrality*. If it has not been executed, they will afford no remedy to execute it. If it has been executed, they will afford no remedy to rescind it.

Micajah Frazer *v.* Robinson & Daniel.

Now the contract of renting was not tainted with illegality, if it is permitted to stand alone in this case; our remedy against Frazer, as our tenant, unlawfully holding over after his term is expired, is undoubted; he does not deny the renting, or attack the renting contract. But he says that the previous contract of purchase was illegal, and our title deed void; he asks the court to exonerate him from a legal contract, because of a previous illegal one. We claim the right of recovery under the legal contract. He attempts to interpose an illegal one. The two are distinct and independent contracts. Now, if the court shall sustain him, is it not affording him a defence against a legal contract, by enabling him to interpose an illegal one? Is it not giving him a defence to the legal contract, which he would not have but for his own previous illegal contract? It as much gives him a *remedy*, as if he had filed the bill to set it aside because illegal, that no court would sustain. In other words, the court, instead of acting on strict neutrality as to the illegal contract, would make it the ground of an attack on a legal contract. The court would become a *partisan* and not a *neutral* on that contract.

If, then, I were to admit the illegality of the contract of purchase, still the court properly admitted the deed, and refused the instruction, because, without testing title, we had the remedy on the contract of renting, which was in no way tainted with illegality.

So much of the foregoing argument as relates to the renting, is useful in this case, only in the event that the court shall overrule its former adjudications on Confederate money contracts, *or* shall, without adjudicating that question, conclude that the law has been correctly administered on the *tenancy contract*, without reference to the other. I think the last the proper mode of deciding this case, because I do not think that the legality of the purchase is really involved in it until the court shall decide against me on the *tenancy contract*. In that event, the other question necessarily comes up for decision, and I implicitly rely upon former adjudications on that question already cited.

SHACKELFORD, C.J., delivered the opinion of the court.

This is an action of ejectment in the Circuit Court of Holmes county, instituted by the defendants in error against the plaintiff at the May Term, 1866, thereof.

During the progress of the trial, a deed of conveyance of the land in question from the plaintiffs in error to the defendants in error, dated on the 9th day of February, 1865, was offered on the part of the defendants in error, as evidence of their title. A motion was made to exclude it from the jury, "because the consideration shown by the deed was Confederate money; because the stamps are not on the deed, but on the clerk's certificates of record; and because the stamps are not sufficient in amount." The court overruled the objections, and permitted the deed to be read to the jury, to which opinion of the court the plaintiff in error excepted.

Exception was taken to the action of the court in refusing the instruction asked by the plaintiff in error.

After verdict, a motion was made for a new trial, for the following reasons:—

"1st. Because the deed from M. Frazer to Robinson & Daniel was admitted as evidence without proper amount of revenue stamps, and void for want of legal consideration."

This motion was overruled by the court, and exceptions taken to the judgment of the court in this particular.

Judgment was rendered upon the verdict for the recovery of the entire land sued for, and for one thousand dollars for rent. And hence the case is brought to this court by writ of error.

The first assignment of error is: "That the court erred in permitting the deed from M. Frazer to Robinson & Daniel, dated 9th of February, 1865, to be read as evidence to the jury. 1st. Because the consideration recited in said deed was 'twenty-two thousand dollars in Confederate notes.' 2d. Because said deed was not stamped with internal revenue stamps of United States. 3d. That the stamps placed upon certificate of clerk was not stamping of the deed. 4th. Because the stamps placed upon certificate of clerk were insufficient."

We shall review the grounds of error in this assignment in their order.

Counsel for plaintiff in error, in support of the first ground of error in this assignment, insists that the contract "is an executory contract," founded wholly upon the consideration of Confederate money, and that it can not be considered valid in law, and the foundation of any contract; that the notes were issued in aid of the rebellion, were illegal and void, and in violation of the Constitution of the United States, and against public policy; "that the plaintiff below could not claim the benefit of any obligation, or predicate a right of action upon an alleged expenditure of Confederate notes."

Admitting, for the present, that the contract is an executory one, as insisted upon by counsel, we are unable to see how he is to be benefited by this position. The question, as presented, is not an open one. Our predecessors, in the case of *Green* v. *Sizer*, 40 Miss. p. 530, have settled the point as to the validity of executory contracts, when the consideration is "Confederate notes or money."

In the able and lucid opinion of the distinguished chief justice who delivered the opinion of the court in that case, will be found the distinction drawn between contracts which are illegal, and such as are legal and valid, when founded on, or connected with, an illegal transaction. The case under discussion comes fully within the principle settled, and the rule laid down in the case of *Green* v. *Sizer*.

The consideration in the case before us was not in any wise connected with the illegal issuance of the Confederate notes: they were new parties, neither affected by the original illegal act of the issuance of the "Confederate notes."

The conclusion of the court, in the case of *Green* v. *Sizer*, after matured investigation, was, that executory contracts, when the consideration was "Confederate notes or money," were legal and valid. We are unable to discover any thing in the views of counsel for the plaintiff in error which would warrant us in dissenting from the opinion of the court, on this point, in the case of *Green* v. *Sizer*.

Counsel presents the same question in another view, when he says, " that this is not a suit to recover Confederate money or its value, but a right claimed to enforce a contract void for want of a legal and valid consideration in law, the consideration being ' Confederate notes.' "   In this view of the question, as presented, counsel seems to admit that if this had been a suit to recover the value of Confederate notes, that the action could be maintained.

Could not the same objection be made, and with as much force, against the recovery of the value of Confederate notes as counsel insists upon, and argues against the recovery of the land in question, paid for by defendant in error with " Confederate notes " ?

It seems clear to us that it could be.   We can not concur with counsel in his views of the contract.   There was a payment of the Confederate money for the land, a deed made and executed, and delivered to the defendant in error, in accordance with the contract of sale, properly acknowledged, and, with the deed, possession of the land delivered to defendant in error.   These facts, as shown by the proof in the record, show an executed contract.

It follows, from these views, that the court did not err in refusing to sustain plaintiff in error, — Frazer's objection to the reading of the deed, on the ground of illegal consideration.

The next objection, made the second ground of error in this assignment, will be considered.

Counsel insists that the deed was inadmissible as evidence, on account of improper stamping, and for an insufficient number of stamps, under the internal revenue law of the United States.   It is contended that the consideration in the deed is for *twenty-two thousand dollars*, and yet stamps only to the amount of " one dollar and a half are found upon the deed."

At the time of the execution and delivery of this deed, the Confederate States, of which Mississippi was one, were at war with the United States ; the authority of the United States was not recognized in this State ; the deed was valid without stamps,

as they were unattainable at that time, and, if attainable, were not required by law to be placed 'upon it.

After the surrender of the Confederate forces of the Confederate States, and after the restoration of the authority of the United States over the State of Mississippi, it became necessary, by a law of Congress, that all deeds or instruments of writing, made and executed during the rebellion, which were required to be stamped by the general law of Congress, should be properly stamped by a certain time, otherwise the parties making such deeds, &c., should be fined fifty dollars. The duty to stamp this deed, under the law of Congress referred to, devolved upon the grantor in the deed,—the plaintiff in error. This duty he neglected; and the deed was by the grantors, Robinson & Daniel, presented to the proper internal revenue officer for the district of Mississippi, within the time limited by the act of Congress, and by that officer stamped.

The defendants in error could do no more than present the deed to be stamped to the proper officer. It was incumbent upon that officer to have placed upon the deed the proper amount of stamps. It is manifest that the deed was presented, and the same stamped; the presumption of law is that it has all the stamps upon it the law requires.

It is true there are not stamps of fifty cents for every $500 of consideration in the deed. It is evident that the revenue officer estimated the value of Confederate notes at the time of the execution and delivery of the deed, and reduced the value to United States Treasury notes. The act of Congress contemplated a one-dollar stamp for every $1,000 in United States Treasury notes, or gold and silver. Upon this basis the deed was stamped.

It is admitted that the proper revenue officer's certificate was attached to the deed, as the stamping officer, and that it was stamped in due time under the law of Congress referred to.

It would have been error in the court to have ruled out the deed from the jury, for this last reason insisted upon by counsel in this branch of his first assignment. The plaintiff in error is estopped from denying the validity upon the ground

of improper stamping. And, in this connection, we think this objection comes from him with a bad grace, — an attempt to take advantage of his own neglect.

The second assignment of error is, —

"That the court erred in refusing the instruction asked for by plaintiff in error." This instruction is as follows: "The court is asked to instruct the jury, that, if they believe from the evidence that the defendant has been in the continued possession of the lands in controversy in this suit, claiming them as his own from a period prior to the date of the deed, under which plaintiff claims, then the law is for defendant; and they must so find, provided they further believe that the purchase-money named in the deed, under which plaintiff claims title to said lands, was agreed to be paid in Confederate money of Confederate States Treasury notes."

The court should not have granted this instruction, for the reasons we have already expressed in our disposition of the first assignment, and for another reason: It assumes a fact in conflict with uncontradicted proofs in the case. It was in evidence before the jury that the plaintiff in error made a verbal contract with defendants in error, to rent or lease the lands in question from them; and that they rented the lands in question to plaintiff in error for the year 1865; and that plaintiff in error was to give or pay to defendants in error one tenth of the crop to be raised on said plantation or lands in question.

The plaintiff in error was in possession, as the tenants of defendants in error, and not in his own right.

The second assignment is not well taken. The verdict is in accordance with familiar and well-settled principles of law, applicable to the evidence in the case, and should not be disturbed.

Let the judgment be affirmed.